IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J.T., individually and as next friend of M.L., a minor, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:20-CV-3443-D |
| VS. | § § | |
| UPLIFT EDUCATION, | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

This is an action arising from the alleged sexual abuse and harassment of a female kindergarten student by a male classroom teacher. Defendant Uplift Education ("Uplift"), the teacher's employer, moves under Fed. R. Civ. P. 12(b)(6) to dismiss claims brought under 20 U.S.C. § 1681(a) ("Title IX") and 42 U.S.C. § 1983 by plaintiff J.T., individually and as next friend of her daughter, M.L., a former Uplift student. For the reasons that follow, the court grants the motion and also grants J.T. leave to replead.

I

M.L. was a kindergarten student at Grand Primary, an Uplift school, in 2019.[1] According to J.T.'s first amended complaint ("complaint"), M.L.'s teacher, Jamil Wazed ("Wazed"), routinely called certain children to his desk while showing movies to the class,

---

[1] In deciding Uplift's Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to J.T., accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in her favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

asking them to perform sexual acts with him, kissing them, and rubbing his beard on their faces and necks.  M.L. informed Uplift's Primary School Director, Chermanda Frazier ("Frazier"), about Wazed's acts on or by August 5, 2019.  Uplift then conducted interviews with at least four children in Wazed's class "days after learning of the teacher's sexual behavior[,]" and Frazier initially determined that Wazed should be allowed to continue teaching at Uplift.  Compl. ¶ 18.  J.T. alleges that Uplift's investigative findings concluded that "[b]ecause Mr. Jamil Wazed's actions were not done out of malicious intent, we believe that he should be allowed to continue to work for Grand Primary after a formal meeting with the Leadership Team" to "layout clear and concise expectations regarding scholar and staff physical space and touch."  *Id*.  (The term "scholar" appears to be used at Uplift to refer a student.)

On August 13, 2019 someone identified as "GCurry"[2] emailed Frazier stating that "at least 3 scholars say[] that [Wazed] kisses them," and "one reported he cuddles with them," and recommending that Uplift "complete a thorough investigation[,] which includes questioning the employee sufficiently."  *Id*. ¶ 19.  Later, the Uplift investigation summary recommended that Wazed be "terminated from his position effective immediately" for violating "scholar safety."  *Id*. ¶ 20.  The summary noted that "[n]o reports have been made by Director Frazier at this moment.  Human resources will consider reporting their decision to [Texas Education Agency]."  *Id*.  The complaint alleges that Wazed "was allowed to

---

[2]The email is from "GCurry@uplifteducation.org," but the complaint does not allege the identity or title of the author or sender.

continue 'teaching' the same students who had been abused for nearly two additional weeks" after the investigation summary. *Id.*

On August 14, 2019 Frazier requested that Wazed return to Uplift's campus "to provide more details in his statement." *Id.* According to J.T., she did not learn of the sexual abuse that M.L. suffered until "many months later in 2020." J.T. then contacted the local police, and Wazed was arrested "shortly thereafter" by the United States Marshals Service North Texas Fugitive Task Force and charged with aggravated sexual assault of a child. *Id.* ¶ 21. J.T. also alleges that, in 2013, Uplift failed to protect its students from another sexual predator who was employed as an Uplift teacher.

J.T. sues Uplift for violations of Title IX, 20 U.S.C. §1681(a), and violations of M.L.'s right to personal security, bodily integrity, and equal protection of the law under 42 U.S.C. § 1983.[3]

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne,*

---

[3]In the complaint, J.T. sometimes refers to an alleged "violation" of § 1983 itself. Section 1983, however, cannot be "violated." "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates[,]" and an "underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir.1997) (internal quotation marks omitted) (quoting *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir.1989)). It is therefore incorrect to refer to a "violation" of § 1983.

*Inc.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive Uplift's motion to dismiss under Rule 12(b)(6), J.T. must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

When ruling on a motion to dismiss, the court does not consider additional facts that are alleged in a response brief but not in the complaint. *See Leal v. McHugh*, 731 F.3d 405, 407 n.2 (5th Cir. 2013); *Roubinek v. Select Portfolio Servicing Inc.*, 2012 WL 2358560, at *3 n.2 (N.D. Tex. June 21, 2012) (Fitzwater, C.J.) (citing *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 263 (5th Cir. 2008) ("[W]hen deciding, under Rule 12(b)(6), whether to dismiss for failure to state a claim, the court considers, of course, only the allegations in

the complaint"); *Coach, Inc. v. Angela's Boutique*, 2011 WL 2634776, at *2 (S.D. Tex. July 5, 2011) (Rosenthal, J.) ("Allegations contained in a response to a motion to dismiss are not appropriately considered in a Rule 12(b)(6) motion, which evaluates the sufficiency of the complaint itself and does not consider allegations not contained in the pleadings." (citation omitted))).

III

The court considers first Uplift's motion to dismiss J.T.'s Title IX claim.

A

Uplift maintains that there is a difference between deliberate indifference "before the fact" and "after the fact." Mot. at 7 (citing *King v. S. Methodist Univ.*, 2015 WL 12723026, at *2 (N.D. Tex. Apr. 27, 2015) (Solis, J.)). Regarding deliberate indifference "before the fact," Uplift posits that J.T. must demonstrate that an appropriate school official had actual knowledge of a substantial risk that sexual abuse or harassment would occur and responded to that knowledge with deliberate indifference; that the complaint alleges no facts showing that Uplift had actual knowledge of a substantial risk that Wazed would sexually abuse or harass M.L. and that Uplift responded with deliberate indifference prior to any abuse or harassment; and that the complaint alleges only that a different Uplift teacher was found in 2013 to be a sexual predator and that Wazed showed movies in his classroom, but does not assert that any appropriate school official knew of a substantial risk that Wazed would abuse or harass any student.

As for deliberate indifference "after the fact," Uplift contends that J.T. must allege

that, after receiving M.L.'s report of abuse, Uplift officially decided to respond with deliberate indifference that itself constituted further harassment of M.L. Mot. at 10 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). According to Uplift, the complaint alleges that M.L. reported Wazed's abuse; that Uplift interviewed at least four students in Wazed's class; that preliminary investigative findings recommended that Wazed be allowed to return to work after discussing expectations around physical space and safe touch; and that, following further investigation, Wazed was terminated. Mot. at 11-12 (citing Compl. ¶¶ 17-20). All of these events took place in August 2019. Uplift maintains that, because the complaint does not specify the nature of the sexual abuse and harassment (other than that Wazed kissed and cuddled with students) and does not detail what M.L. told school leadership, J.T. has also failed to sufficiently plead that Uplift responded with deliberate indifference to the unspecified allegations. Uplift also posits that J.T. has not sufficiently alleged that M.L. suffered any further harassment due to Uplift's response, considering that she has not alleged that M.L. even encountered Wazed after she reported him.

J.T. responds that the complaint sufficiently states a Title IX claim based on Uplift's deliberate indifference both "before the fact" and "after the fact." Regarding "before the fact" deliberate indifference, J.T. contends that the complaint alleges that Uplift was aware that Wazed maintained an environment to facilitate his sexual abuse of female students because Uplift knew that Wazed showed movies to his class in a dark classroom. She further posits that Wazed "maintained a tent or walled-off section of the classroom where he would take certain female students to demand sexual favors, further enhancing his ability to hide

sexual predation from view." Resp. at 2-3. J.T. acknowledges, however, that the complaint does not include this allegation.

J.T. also maintains that she has sufficiently pleaded Uplift's "after the fact" indifference because she alleges that Uplift did not immediately terminate Wazed after M.L. reported the abuse, did not notify the parents of the victims, and did not notify the police, even after Wazed was terminated. J.T. contends that Uplift was deliberately indifferent to M.L.'s rights because it knew that sexual abuse can have long term physical and emotional effects on children, and its refusal to disclose abuse to M.L.'s parents could have resulted in M.L.'s trauma's being undiagnosed and untreated.

B

To state a Title IX claim for sexual assault of a student by a teacher on which relief can be granted, a plaintiff must plausibly allege that a school official with authority to address the harassment had actual knowledge of the harassment or that there was a substantial risk that harassment would occur, and the school was deliberately indifferent to such harassment. *See Gebser*, 524 U.S. at 290; *see also Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 652 (5th Cir. 1997). A school acts with "deliberate indifference" when its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). A school can be deliberately indifferent "before the fact"—i.e., the school has actual knowledge of a substantial risk that sexual abuse or harassment will occur and does not respond reasonably to that risk—or "after the fact"—i.e., after the school has knowledge

of abuse or harassment, it does not respond reasonably, and the student suffers further harassment as a result. *See, e.g, King*, 2015 WL 12723026, at *2.

Regarding "before the fact" indifference, J.T. alleges that (1) Uplift knew that Wazed showed movies to M.L.'s class and that (2) Uplift employed a different sexual predator in 2013. *See* Compl. ¶¶ 17, 22. Taken as true and viewed in light most favorable to the J.T., these allegations do not plausibly allege that Uplift was aware of a substantial risk that Wazed would harass his students.[4]

Regarding Uplift's actions "after the fact," J.T. alleges that (1) Uplift's initial response to M.L.'s report of sexual abuse was to permit Wazed to continue teaching with additional training; (2) Uplift failed to notify the parents of M.L. and the other affected students; and (3) Uplift failed to notify the police regarding Wazed. Compl. ¶ 17. But even if J.T. has sufficiently alleged that Uplift's response to M.L.'s report was clearly unreasonable—a question the court does not now decide—J.T. has not plausibly pleaded that Uplift's response was so unreasonable as to cause M.L. further harassment. *See, e.g., Davis*, 526 U.S. at 645 (holding that a school may not be liable for damages under Title IX unless the deliberate indifference "cause[s] students to undergo harassment or make[s] them liable or vulnerable

---

[4]J.T. maintains that Uplift also knew that Wazed kept part of his classroom hidden from view. But this allegation is not included in the complaint, and the court expresses no view on whether, if alleged, it would lead the court to conclude that J.T. has plausibly pleaded that Uplift was deliberately indifferent to a substantial risk of abuse.

to it.") (citation omitted).[5]

Accordingly, the court holds that J.T.'s Title IX claim must be dismissed because she has failed to plead a plausible claim for relief.

IV

The court now turns to J.T.'s § 1983 claim, in which she alleges that Uplift violated M.L.'s constitutional rights to personal security, bodily integrity, and equal protection.

A

Uplift maintains that J.T.'s § 1983 claim is not sufficiently pleaded, primarily because the complaint does not allege that the relevant policymaker——here, Uplift's Board of Directors ("Uplift Board")—adopted an unconstitutional policy or otherwise knew about, or acquiesced in, a persistent, widespread unconstitutional practice. Uplift also contends that the complaint does not plead any facts to support § 1983 liability on a theory of Uplift's failure to train or supervise Wazed, aside from the conclusory allegation that Uplift has a custom or policy of failing to protect students from violations of their rights.

J.T. responds that she has alleged that Uplift maintained a persistent, widespread custom of facilitating Wazed's sexual abuse of female students because Uplift knew that Wazed frequently showed movies to his class and there were "obvious features" of the classroom "designed to make sexual assaults easier," Resp. at 18; that Uplift's response to

---

[5]J.T. implies in her response that Uplift's failure to notify M.L.'s parents could have prevented her from getting needed medical and therapeutic treatment. But these allegations are not pleaded in the complaint, and the court expresses no view on whether, if alleged, they would lead the court to conclude that J.T. has stated a claim on which relief can be granted.

M.L.'s report was initially to protect Wazed's job and avoid further scrutiny, which continued Uplift's practice of tolerating and excusing sexual assault of the students; and that she has sufficiently stated a claim for Uplift's failure to train and supervise Wazed because Uplift recommended that Wazed receive additional training regarding physical space and touch and because "[a]ny training or supervision program that knowingly permits teachers to violate school policies designed to protect student safety is plainly inadequate," Resp. at 22.

Uplift replies that J.T. has not alleged that any Uplift official knew of any particular condition of Wazed's classroom, and, even with that knowledge, Uplift would not have been unreasonable in failing to surmise that students were being sexually abused; that J.T. has failed to point to a case in which a school's knowledge of the conditions of a teacher's classroom equated to knowledge of a substantial risk that students were being harassed or abused; that after M.L. made her report, Uplift separated Wazed from his students, investigated the report, and made an initial recommendation that Wazed receive additional training, then ultimately decided to terminate Wazed's employment; that Uplift's failure to notify the police or M.L.'s parents does not constitute deliberate indifference; and that J.T. has failed to allege that Uplift's response itself caused M.L. further harassment.

B

A school district may be subject to liability under § 1983 if the alleged constitutional violation is due to an official action, policy, or custom. *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 759 (5th Cir. 1986) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)).

But a plaintiff cannot rely on a theory of *respondeat superior* to establish a § 1983 claim. *Id*.

The Fifth Circuit defines "official policy" as

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam). For § 1983 claims against a school, the plaintiff must plausibly allege that the offending policy or practice was approved or sanctioned by the final policymaker or a person to whom the final policymaker delegated policy-making authority. *Piotrowski v. City of Houston*, 237 F.3d 567, 578-79 (5th Cir. 2001)); *Jett,* 798 F.2d at 759-60 (finding jury instruction insufficient because it was not clear that city could be bound by the principal or superintendent only if he was delegated policymaking authority).

C

J.T. alleges that Uplift is liable under § 1983 for failing to investigate Wazed's misconduct, failing to adequately train and supervise Wazed, and manifesting deliberate indifference to the assault of M.L. The complaint alleges that Uplift had a "policy" of

"engag[ing] in a pattern and practice of behavior designed to discourage and dissuade students who had been sexually assaulted, as well as their parents, from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated." Compl. ¶¶ 30-31.

Assuming *arguendo* that J.T. has adequately alleged the existence of such a policy or practice at Uplift, she has not alleged that this policy was officially adopted and promulgated by a final policymaker or a person to whom that authority was delegated. Uplift contends—and J.T. does not dispute—that the final policymaker for Uplift is the Uplift Board. Mot. at 17-18; Resp. at 20-21. J.T. maintains that the Uplift Board delegated to some unspecified person the day-to-day supervision of teachers and classrooms. The complaint does not allege, however, that the Uplift Board promulgated an offending policy or had knowledge of an offending practice, nor does it allege that the Board delegated policy-making authority to another person at Uplift who then promulgated or sanctioned an offending policy or practice.

D

J.T. has also failed to plausibly plead that Uplift is liable under § 1983 for failing to adequately train and supervise Wazed.

To plead a plausible claim that Uplift failed to train or supervise Wazed, J.T. must sufficiently allege that (1) Uplift failed to supervise or adequately train Wazed; (2) a causal link exists between the failure to train or supervise and the violation of M.L.'s rights; and (3) the failure to train or supervise amounts to deliberate indifference to M.L.'s rights. *Luna v.*

*Valdez*, 2018 WL 684897, at *13-14 (N.D. Tex. Feb. 2, 2018) (Fitzwater, J.) (citing *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017)), *aff'd*, 734 Fed. Appx. 262 (5th Cir. 2018). Uplift "must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998)). "The plaintiff must generally demonstrate at least a pattern of similar violations . . . [and] the inadequacy of training must be obvious and obviously likely to result in a constitutional violation." *Id.* A plaintiff can, however, "demonstrate liability based on a single incident if the constitutional violation was the highly predictable consequence of a particular failure to train." *Davidson*, 848 F.3d at 397 (citation and internal quotation marks omitted).

Regarding Uplift's training and supervision, the complaint does not allege any facts that enable the court to draw the reasonable inference that Uplift failed to adequately train and supervise its teachers. The complaint does not identify any training program, how it is insufficient, how Uplift failed to supervise its teachers, how the failure to train or supervise caused a violation of M.L.'s rights, or how the training and supervision amounted to Uplift's deliberate indifference to her rights.

Accordingly, the court concludes that J.T. has failed to plead a plausible claim for relief under § 1983, and it dismisses this claim.

V

Although the court is granting Uplift's motion to dismiss, it will grant J.T. leave to replead.

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Because J.T. has not stated that she cannot, or is unwilling to, cure the defects that the court has identified, the court grants her 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

\* \* \*

For the reasons explained, the court grants Uplift's motion to dismiss and grants J.T. leave to file a second amended complaint.

**SO ORDERED**.

May 25, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE